(PATRICK) P. T. CLARY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96496.    Promulgated November 5, 1940.

*John J. Dougherty, C. P. A.,* for the petitioner.
*B. D. Daniels, Esq.,* for the respondent.

### OPINION.

MELLOTT: Respondent contends that the royalties applied during the taxable years by Swanson Brothers to the payment of the Dukane indebtedness "were royalties from the taxpayer's property—constructively received by him and appropriated to the use of another." He argues that the question is simply: To whom is the income from proceeds arising and derived from patents at the initial stage attributable—not whose income it may be after other steps are taken. He urges that, even if it be assumed, for the purpose of discussion, that Swanson Brothers would not have entered into the contract without the agreement to liquidate the account of the Dukane Coffee Corporation, still the royalties accrued to the taxpayer first before they could be applied to other purposes, and hence that the income (royalties) was not divested until after it (they) had been earned. He also denies petitioner's various contentions, hereinafter set out.

Petitioner contends that he never had the unrestricted choice of taking, or refraining from taking, possession of the income in question, and, therefore, that he never constructively received it; that

the instrument which created the income destroyed it as far as he was concerned; that he waived the right to receive it as part of the consideration for the contract; that the contract would never have been executed if he had not consented to the waiver; and that, if the waiver can be considered to be an assignment, it constituted an assignment of a property right, and any income accruing thereunder was taxable to the assignee.

The question is a difficult one and the right answer is elusive. Petitioner assumed the burden of attempting to overturn the presumptive correctness of the respondent's determination and, for reasons which will be pointed out, we think he has succeeded in doing so.

The facts set out in the findings need not be repeated. Suffice it to note at this juncture that petitioner acceded to what appears to have been rather harsh terms—in the language of our findings—"because he felt it was the best arrangement that he could make and that the royalties to be received by him after the indebtedness was liquidated would adequately compensate him for the use of his patent." He testified that it was merely a question of giving "something to get something bigger. * * * I had to do it to get them for the whole term of the patent." "That was just for a bargain; the best I could take." Under cross-examination he expressed the same idea when he likened the transaction to giving "a sardine for a salmon." Respondent, upon brief, points out that it was a rather large "sardine" which he gave up, since it amounted to more than $50,000. It can not be gainsaid that there is considerable substance to this argument; but in this connection reference may appropriately be made to the fact that petitioner anticipated that the royalties would be sufficient to liquidate the Dukane obligation in approximately two and one-half years, leaving him free to collect royalties at an estimated rate of $20,000 a year for approximately fifteen years. When these facts are kept in mind the terms of the contract are not so shockingly harsh as they first appear to be.

No attempt will be made to summarize all of the evidence. It indicates, however, that the Dukane Corporation was having financial difficulties. One faction of its management was urging that it be placed in bankruptcy, while petitioner and his nephew—the latter owning about 20 percent of its stock—wished to save it, if possible. Swanson Brothers naturally wanted to collect the account, which was long past due. The situation was such that a hard bargain could be driven. Whether it was a wise one or not, from the standpoint of the petitioner, need not be decided. It is sufficient for the present purposes to advert to the fact, which is amply shown by this record and set out in our findings, that petitioner had not guaranteed the Dukane indebtedness to Swanson Brothers, had not been responsible for the granting of the credit under which it had been created, and

was not personally liable for the payment of any part of it. He, therefore, was not discharging any personal obligation of his own in consenting that a portion of the royalties be applied upon the Dukane indebtedness. He was not a stockholder or financially interested in the Dukane Coffee Co.

This Board and the courts have held that an owner of property who contracts to sell it or lease it to another can not escape tax on the income resulting from the sale or lease by designating in the contract that the selling price or rental shall be paid to a third party. *Samuel V. Woods*, 5 B. T. A. 413; *J. T. Browning*, 16 B. T. A. 485; *John Shirley Ward et al., Executors*, 22 B. T. A. 352; affd., 58 Fed. (2d) 757; certiorari denied, 287 U. S. 656; rehearing denied, Dec. 5, 1932; *W. L. Shore*, 26 B. T. A. 389. The reason for this holding is well stated in *Samuel V. Woods, supra*, relied upon by the respondent. There an owner leased property and in the lease agreement directed that the lessee pay to his wife and daughter portions of the rents and royalties as they became due. In holding that the amounts paid to the wife and daughter constituted income of the lessor, this Board said:

The petitioner, the parties agree, was the owner of the property from which the income was derived. As such owner he had the right to the income or the right to dispose of it. In the enjoyment of this right, he ordered it paid directly to another until otherwise ordered. He might have taken it, or he might have ordered it sent to his bank, paid directly to a creditor, or held by the lessee. Whichever of these courses he took was an exercise of his enjoyment of the fruits of his ownership inherent in such ownership. * * * Such a voluntary act in anticipation of actual receipt and before the income exists can only affect the income when it actually arises, and in our opinion it may properly be treated as coming to him and immediately disposed of. See *Ormsby McKnight Mitchel*, 1 B. T. A. 143.

In our opinion the facts relating to the royalties applied by Swanson Brothers during the taxable years to the payment of the indebtedness of the Dukane Coffee Corporation call for the application of a different rule than that applied in *Samuel V. Woods, supra*, and related cases. Petitioner, as has been pointed out above, never had the right to acquire this income or to dispose of it as he saw fit. It can not be said, therefore, that he ever, either actually or constructively, received it. Moreover, the agreement did not provide that it be paid to a third party, although it is true that its application to the indebtedness of the Dukane Coffee Corporation did unquestionably benefit that corporation, which was not a party to the agreement. However, the primary purpose of the provision was not so much to benefit Dukane as it was to benefit Swanson Brothers; and it had its inception in the desire of that concern to liquidate one of its bad accounts. It was inserted at the insistence of Swanson Brothers and to induce it to enter into the contract.

It is apparent from what has been said that we are of the opinion the Commissioner erred in including the amounts in controversy in petitioner's income. But such holding need not be predicated entirely upon the ground discussed. Under the contract Swanson Brothers acquired not only an interest in petitioner's patent—the exclusive right to use it in a specified territory, which vested "*pro tanto* title to the patent itself in the grantee" (*Claude Neon Lights, Inc.*, 35 B. T. A. 424, 427, and cases cited)—but also the right to the income from such property to the extent of the Dukane indebtedness. Swanson Brothers thus acquired two valuable property rights in exchange for its promise to pay petitioner all royalties accruing after the Dukane debt had been liquidated. A taxpayer may transfer or assign property or property rights and any income subsequently arising therefrom is not taxable to him, as transferor or assignor. *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 296 U. S. 555; *Blair* v. *Commissioner*, 300 U. S. 5; *Hall* v. *Burnet*, 54 Fed. (2d) 443; certiorari denied, 285 U. S. 552; *Commissioner* v. *O'Donnell*, 90 Fed. (2d) 907.

We are of the opinion and hold that the respondent erred in including the amounts in controversy in petitioner's gross income.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

---

HARRON, dissenting: The main facts in this case were stipulated and the license agreement between petitioner and Swanson Brothers was introduced in evidence. Petitioner called three witnesses—petitioner, S. R. Rudolph, treasurer of Dukane Coffee Corporation and a nephew of petitioner, and B. J. Wells, a member of the partnership known as Swanson Brothers. These witnesses were called by petitioner to testify concerning the circumstances under which it was agreed that the first royalties were to be applied to liquidate Dukane's debt to Swanson Brothers. Respondent objected to certain testimony being given which might have the effect of modifying the terms of the written agreement. In the interests of learning all the facts pertinent the objections were overruled. There is no ambiguity in the terms of the license agreement. Hereinafter comment will be made upon the oral testimony.

Petitioner contends that he did not constructively receive the royalties which accrued in the taxable years, that the royalties were assigned to another as part of the agreement made with Swanson Brothers under compulsion in order to get Swanson Brothers to enter into the agreement and that, therefore, the assignment of the first royalties, or the "waiver" of them, constituted consideration from

petitioner to Swanson Brothers. Petitioner makes a further contention that the rule of *Nelson* v. *Ferguson, supra,* and *Julius E. Lilienfeld,* 35 B. T. A. 391, applies here. The applicability of the rule in those cases, and similar cases, to this case is not clearly argued, but it appears that petitioner contends that petitioner assigned a property right to Dukane in his license agreement and that the royalties in question issued from the assigned property right so as to relieve petitioner, the assignor, from taxation on the royalties.

First, attention must be given to the terms of the license agreement. The only parties to the agreement are petitioner, as "patentee", and Swanson Brothers, as "licensee." The agreement is written in the form of an ordinary license agreement. No consideration is recited for the agreement in any specific terms. The licensee is given the exclusive use of the process developed by petitioner within a territory and it agrees to pay royalties for the use of the process. The provisions of paragraph II of the agreement are quoted in part in the findings of fact. A fuller quotation is helpful in understanding the terms of the agreement.

II. Licensee agrees to pay to the Patentee a royalty for the use of the said method of processing coffee on each and every bag of coffee roasted by the said Licensee during the continuance of this agreement, * * *. The royalty shall be in an amount equal to one-half of the cost price to the licensee of the number of pounds of coffee saved by the reduction of shrinkage due to the use of this process. * * * [See quotation in findings of fact for the rest of the material provisions of paragraph II.]

The provision for termination of the license agreement is as follows:

V. Upon failure of the licensee to make returns or to make full payments of the license fees or royalties, as herein provided for the period of thirty (30) days from the date above provided for such returns and payment or upon any other default or violation by the licensee of this agreement, the patentee shall have the right and option to terminate this license on thirty (30) days written notice to that effect mailed to the licensee at his last known business address; otherwise this license shall extend for a period of seventeen years from the date hereof.

A complete reading of the license agreement shows that the only consideration was the granting of the license by petitioner. The petitioner had the exclusive right to charge royalties. The grant of a license is adequate consideration for a promise to pay royalties, 48 C. J. 276, par. 447, and ordinarily it is the only consideration moving from a licensor to the licensee. The latter part of paragraph II of the agreement is no more than a provision for the method of payment of the royalties, and it is a direction to the licensee, first, to apply royalties to the liquidation of a debt of another, for which petitioner was in no respect liable at law, and, second, to pay royalties thereafter to petitioner, the licensor. Under such terms, and since pe-

titioner was in no way obligated to pay the Dukane debt, Dukane was no more than a donee beneficiary of the agreement. The contention made by petitioner that he "waived" the receipt of the first royalties as an inducement to obtain the agreement from Swanson Brothers must be carefully scrutinized, first, because it goes outside the terms of a written contract and, second, because of petitioner's close relation to the Dukane Coffee Corporation, and one of its stockholders. Petitioner was president of that company and his nephew owned about 20 percent of the stock of the company. Petitioner was not married and his nephew may have been his next of kin.

Some of petitioner's testimony has been referred to already. But all of petitioner's testimony, taken as a whole, does not strongly support the contention that petitioner was subject to compulsion in the matter of providing that the royalties should first be applied to reduce the Dukane debt. On direct examination his testimony is that, while he did not originally suggest that royalties be used to pay the Dukane debt, that feature was part of what he considered a good bargain. On cross-examination he testified that he was interested in the matter because "one faction was putting us [Dukane] into bankruptcy, and, in my feeling, bankruptcy was a disgrace, and so that is the only reason I got into it; not to make money for me. That was not the purpose. It was just because this one faction was bringing it [Dukane] into bankruptcy." The above testimony, with other testimony, shows clearly that, while petitioner was not very active or interested in the success of the business of Dukane, he wanted to help prevent that company from being forced into bankruptcy. Such evidence, in my opinion, demolishes the petitioner's contention that he "waived" the first royalties as consideration to induce Swanson Brothers to enter into the license agreement. Petitioner's testimony indicates strongly that he wanted very much to help Dukane continue in business without going through bankruptcy and that he was willing to contribute to reduction of the Dukane debt because he believed it could be liquidated in about two and one-half years and, since his license agreement had seventeen years to run, the arrangement would be profitable to him in the end, anyway.

On the record in the case, I am of the opinion that the question must be decided solely upon the terms of the license agreement of October 19, 1933, and, so considered, I believe it is error to hold that petitioner is not taxable upon the royalties which accrued in the taxable years under the license agreement, for the following reason: There was no assignment to Dukane of any property rights in the license agreement whatsoever. That being true, as I believe is entirely clear, it can not be held that the royalties in the taxable years accrued to Dukane under any *property rights* transferred to it. Unless such can be concluded, the benefit derived by Dukane was no more

than a gift to it from petitioner. In fact, Dukane was Clary's donee of the royalties or income which accrued under the license agreement between petitioner and Swanson Brothers.

The majority view states that "Petitioner * * * never had the right to acquire this income or to dispose of it as he saw fit." This view appears to be dictated by a conclusion that the evidence shows that Swanson Brothers insisted that the provision be inserted in the license agreement. The evidence is, at best, extremely weak upon that point. There is a question whether or not it is material in deciding the question. Quite naturally, Swanson Brothers were interested in receiving payment of an account receivable. But petitioner was under no legal obligation to pay Dukane's debt. Passing from that to the part quoted from the majority opinion, I believe the conclusion stated is erroneous as a matter of law. Petitioner was the owner of property rights in a process for which patents were pending and were granted. He alone could grant a license to use the process. He made such grant by the license agreement and the royalties were derived thereform. As the only party to the license agreement and the sole owner of the process licensed, petitioner had the right from the date of the agreement to all royalties provided for in the agreement and to have them applied as provided for therein. Petitioner directed in the license agreement that royalties be applied to reduce the Dukane debt to Swanson Brothers. Nevertheless the royalties first accrued under the license agreement to petitioner under his property rights in that agreement, none of which were assigned to Dukane. The royalties were earned and were accrued under the terms of the agreement. I am unable to agree that petitioner never had the right to acquire the royalties accruing *ab initio*, but I believe, rather, that petitioner at all times had the right to acquire the royalties and that he disposed of them by his direction, or consent, to have them applied to the Dukane debt. Certainly the royalties did not accrue to Swanson Brothers, which could not be both the obligee and the obligor of royalties, and Dukane was not assigned any property rights in the property which produced the royalties. It is, of course, not determinative that petitioner did not first receive the royalties. An assignment of income in anticipation of payment thereof does not relieve the assignor from, tax thereon.

I believe this is a clear case of an anticipatory direction to apply future income of property, voluntarily, to the use or benefit of another whose status is that of a donee, and that the rule of *Samuel V. Woods*, 5 B. T. A. 413; *Ward* v. *Commissioner*, 58 Fed. (2d) 757; 287 U. S. 656, and like cases is controlling, and that respondent properly included in petitioner's income the royalties which accrued in the taxable years. I respectfully dissent.

BLACK, ARNOLD, HILL, and OPPER agree with this dissent.